**Chester TROWBRIDGE, III, SSN: 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, Plaintiff,**

v.

**Otis R. BOWEN, Secretary of Health and Human Services, Defendant.**

**No. CIV-87-2094 PHX WPC.**

United States District Court, D. Arizona.

Dec. 16, 1988.

Mark Caldwell, Phoenix, Ariz., for plaintiff.

John Mayfield, Assist. U.S. Atty., Phoenix, Ariz., for defendant.

## MEMORANDUM AND ORDER

COPPLE, District Judge.

Plaintiff, Chester Trowbridge ("Trowbridge") applied for and received disability insurance benefits for the period beginning November 28, 1986. Mr. Trowbridge claims the onset date of his disability should have been designated as April 14, 1985. Mr. Trowbridge brought this action pursuant to Title 42 U.S.C. § 405(g) (the Social Security Act) to obtain judicial review of the Secretary's decision. Trowbridge filed a Motion for Summary Judgment on his complaint and the Government filed its Cross-Motion for Summary Judgment. Oral argument was held and the Court now rules on the Motion and Cross-Motion for Summary Judgment.

## I.   FACTUAL BACKGROUND [1]

The pleadings indicate that Mr. Trowbridge began having medical problems sometime during early to mid 1984. He was admitted to the hospital or seen in an emergency room for disorders involving seizures. He underwent testing and was diagnosed with: (1) left frontal hemorrhage; (2) intracerebral bleed; (3) alcohol abuse; and (4) urinary tract infection. His

---

**1.** Notes entitled "P's Facts ¶ x" refer to Plaintiff's Statement of Facts, filed August 5, 1988. Those entitled "D's Facts, page x" refer to the Defendant's Memorandum in Support of Cross-Motion for Summary Judgment.

medical records indicate that a new hemorrhage developed between June and November, 1984. (P's Facts ¶ 2, 3, 4). Following hospitalization in May, 1984, Trowbridge was placed on Dilantin and Tylenol III. Sometime thereafter he ceased taking this medication. In May, 1985, however, Trowbridge was hospitalized after taking an overdose of the Dilantin and phenobarbital. (D's Facts page 2–3). During this hospitalization, a CAT scan revealed moderate hydrocephalus and left frontal atrophy, both essentially unchanged from the April 1, 1985 examination. (P's Facts ¶ 6). Trowbridge continued to have neurologically-related disorders throughout 1985 in addition to problems associated with alcohol abuse. He was again hospitalized and admitted not taking his medication. (P's Facts ¶ 6, 7, 8).

Between December, 1985 and February, 1986, Trowbridge was confined to the Maricopa County jail for driving while intoxicated. (P's Facts ¶ 9). There is nothing in the record indicating whether Mr. Trowbridge had any seizures during his jail term.

Further testing continued in March, 1986, and Trowbridge was taken to an emergency room in April. He was hospitalized in November, 1986 and the consulting neurologist opined that his seizures may stem from past substance abuse. (P's Facts ¶ 10, 11). He was then admitted for in-patient treatment for alcohol dependency syndrome and was discharged in December, 1986. (D's Facts page 4).

In January, 1987, Trowbridge underwent psychological and neuropsychological testing. The testing physician rendered diagnoses of organic brain syndrome, seizure disorder, left frontal lobe hemorrhage and resultant cerebral hemisphere dysfunction. (P's Facts ¶ 12).

## II. DETERMINATION OF DISABILITY ONSET DATE

The only issue before this Court is whether there is substantial evidence in the record which justifies an onset date of November 28, 1986. *Swanson v. Secty of Health & Human Services,* 763 F.2d 1061, 1065 (9th Cir.1985). The *Swanson* court held that the claimant's disorders had not developed "definitive disabling symptoms" until the time of their diagnosis, and therefore, the selected onset date was supported by substantial evidence. Mr. Trowbridge's medical evidence is quite different than that found in *Swanson.*

The medical records reflect that Trowbridge was admitted to a hospital in May, 1984 for evaluation of seizure activity. At that time, hospital personnel witnessed a seizure episode and testing indicated "a large left frontal lobe hemorrhage with some peripheral adema and mid-line shift." *See,* Secretary's Decision at page 3. His medical records indicate that he had a long history of alcohol and drug abuse. The seizure disorders, in combination with the recorded alcohol and drug abuse and the diagnosis of organic effective disorder as early as May, 1985, belie the Secretary's claim that Trowbridge's disability onset date is November 28, 1986. His decision, therefore, is not supported by substantial evidence on the record.

The evidence is clear that Mr. Trowbridge suffered from these disorders much earlier than November 28, 1986—a date selected by the Secretary which corresponded with his admission into Phoenix Memorial Hospital. The Secretary discusses the previous hospital admissions and medical evidence, however, this substantial evidence is essentially set aside in favor of the November, 1986 date. The Secretary should have placed more weight on the existing medical evidence in determining Trowbridge's onset date. *See, Swanson,* 763 F.2d at 1065 ("we caution that the critical date is the date of onset of disability, not the date of diagnosis.").

Further, the Secretary, in establishing the November, 1986 onset date, failed to follow the specific guidelines set out in Social Security Ruling No 83–20 ("Ruling 83–20"). In this case, the onset date of Trowbridge's nontraumatic disability, utilizing the three factors identified in Ruling 83–20, should have been listed as April 14, 1985. Accordingly, IT IS ORDERED:

1. Plaintiff's Motion for Summary Judgment is granted.

2. Defendant's Cross–Motion for Summary Judgment is denied.

3. Plaintiff's counsel will submit a form of Judgment no later than January 6, 1989.